UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————X

**KEVIN McCAFFREY,**

                           Plaintiff,           Case No.:

                                                <u>Complaint</u>

Against

**THE NEW YORK CITY POLICE DEPARTMENT**
and **THE CITY OF NEW YORK,**              **TRIAL BY JURY**
                                     **REQUESTED**

                        Defendants.

—————————————————————————-X

Plaintiff, **NYPD Police Officer KEVIN McCAFFREY,** through his attorneys, The Mermigis Law Group, P.C., as and for this Verified Complaint against The New York City Police Department and The City of New York, as set forth herein, respectfully states and alleges, upon information and belief, as follows:

## INTRODUCTION

1.     Plaintiff **KEVIN McCAFFREY** submitted a religious accommodation request and apprised Defendants that his religious beliefs conflict with Defendant's mandatory Covid-19 vaccine policy. Plaintiff informed Defendants that his religious convictions are informed by the Christian Faith and the Bible, and his religious beliefs prevent him from receiving the Covid-19 vaccine because Plaintiff cannot inject his body with a vaccine that was "either developed or tested using fetal cells that originated in abortion." Plaintiff believes that "abortion is murder and a sin

1

against God" because "human life begins at conception" and "the sanctity of life is precious to God." Plaintiff also believes the body is sacred and Plaintiff should not receive chemicals that will manipulate, teach or change God's creation, namely the human cell and quotes from 1 Corinthians 6:19, *"Or do you know your body is a temple of the Holy Spirit within you, who, you have from God?"*

2.     Plaintiff **KEVIN McCAFFREY** worked tirelessly throughout the pandemic without ever complaining, while putting himself at great personal risk. Plaintiff was deemed essential when the covid-19 pandemic first hit in 2020. While most of the world stayed "safe at home," Plaintiff worked overtime helping strangers and saving countless lives and often relied on his faith to get him through these and other difficult times.

3.     It is transparent that the New York City Police Department and the City of New York's process to protect religious rights is both ***illusory and insincere***. In short, it's just "theater." The nearly universal rubber stamp denial of religious exemption requests and termination violates applicable law.

4.     As the Supreme Court held just last year, "even in a pandemic, the Constitution cannot  be put away and forgotten." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141  S. Ct. 63, 68 (2021) (emphasis added).

## PRELIMINARY STATEMENT

5.     This action is brought to recover damages because of Plaintiff's constructive termination from the NYPD despite his sincerely held religious beliefs.

2

Plaintiff's request for a religious accommodation was denied despite working with an accommodation for almost a year. Plaintiff is challenging the Defendants' discrimination in the religious accommodation request procedure and their failure to provide accommodations to employees with sincerely held religious beliefs. Defendants failed to properly follow New York City Human Rights Law.

6.      Plaintiff had a wonderful career for ten loyal years as a Police Officer and loved his job. Plaintiff's accommodation request was denied even though Plaintiff was working with an accommodation during the complete and continuous accommodation process for nearly one year.

7.      Despite The City of New York having its own administrative code prohibiting religious discrimination and retaliation in the workplace, it permitted the New York City Police Department to intentionally discriminate against the Plaintiff who objected to taking a vaccine that was developed, tested and researched utilizing aborted fetal cells.

8.      Defendants violated the New York City Human Rights Law, codified in Title 8, Chapter 1 of the New York City Administrative Code.

9.      The New York City Human Rights Law ("NYCHRL") requires a more rigorous process than the State Human Rights Law. Courts must construe the "NYCHRL" broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible. *Albino v. City of New York*, 16 NY3d 473 (2011).

10.    The NYCHRL places the burden on the employer to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business. *Jacobsen v. New York City Health and Hospitals Corporation*, 22 NYS3d 824 (2014). The Defendants failed to do so because Plaintiff was working with an accommodation for several months and could have easily been accommodated.

11.    The failure to provide Plaintiff who qualifies for a religious exemption with a Reasonable Accommodation from the Vaccine Mandate of NYPD violates NYAC §8-107.

12.    Defendants have violated Administrative Code §8-107(19) as Defendants used a discriminatory practice to coerce, intimidate, threaten, or interfere with, or attempt to coerce, intimidate threaten or interfere with Plaintiff in his exercise or enjoyment of his closely held religious beliefs.

13.    Defendants eventually denied Plaintiff's application for a Reasonable Accommodation on August 8, 2021 even though Plaintiff worked with an accommodation for almost one year.

14.    As a result, Plaintiff was constructively terminated on August 15, 2022.

## PARTIES

15.    Plaintiff is a citizen of the United States and a resident and domiciliary of Robertson County, State of Tennessee.

4

16.     Plaintiff was a police officer who was employed by Defendants NYPD and the City of New York since 2012. Plaintiff was constructively terminated on August 15, 2022 because Defendants refused to reasonably accommodate his religious beliefs.

17.     Plaintiff's sincerely held religious beliefs as a Christian requires him to refuse vaccines developed or tested with aborted fetal cells. Plaintiff also believes the body is sacred and Plaintiff should not receive chemicals that will manipulate, teach or change God's creation, namely the human cell and quotes from 1 Corinthians 6:19, "*Or do you know your body is a temple of the Holy Spirit within you, who, you have from God?*"

18.     Defendant City maintains a police force known as the New York City Police Department (hereinafter "NYPD"), a municipal corporation duly organized and existing under and by virtue of the Laws of the State of New York. The NYPD's principal office is located at 1 Police Plaza, New York, New York.

19.     Defendant City of New York is a municipality organized and existing under the laws of New York State. The City of New York was and is responsible for the policy, practice, supervision, and conduct of its Officers and Agencies at all relevant times hereto. The City of New York's principal office is located at 1 Centre Street, New York NY 10007.

20.     At all times herein mentioned, Defendants have been an "employer" as defined by NYCHRL(N.Y.C. Admin. Code § 8-102).

21.      At all times herein mentioned, Defendants NYPD and NYC employed no fewer than fifteen (15) persons.

## JURISDICTION AND VENUE

22.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between Citizens of different States and the matter in controversy exceeds the value of $75,000. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to hear claims so related under the New York City Human Rights Law.

24.    Venue is proper in this district under 28 U.S.C. §1391(b) because Defendant maintains a principal place of business within this District and a substantial part of the events giving rise to the cause of action arose here.

## STATEMENT OF FACTS

25.      In the midst of manpower shortages and spikes of violent crime, Plaintiff stepped up to provide essential services for New York City when the majority of citizens remained safely at home. And although being a police officer was often a thankless job, with the public growing increasingly hostile and dangerous, it did not stop Plaintiff from risking his life to serve and protect this City.

26.      The former Mayor and the City of New York issued a Vaccination Mandate that all NYC employees must provide verification that they are vaccinated against covid-19 by October 29, 2021. The Defendants NYPD and the City did not

collectively bargain with Plaintiff's Union, the Police Benevolent Association, before implementing or enforcing the Vaccine Mandate.

27.     The Vaccine Mandate provided for reasonable accommodations on its face pursuant to the Order of the New York City Commissioner of Health and Mental Hygiene.

28.     The City promulgated a written policy regarding the implementation of the Vaccine Mandate and the reasonable accommodation process. This policy, entitled "FAQ on New York City Employees Vaccine Mandate" provided that "[a] sincerely held religious, moral, or ethical belief may be a basis for a religious accommodation."

29.     This policy also provided that the alternative to vaccination allowed which would not cause an undue hardship if an employee is granted a reasonable accommodation would be submission of a weekly negative test result.

30.     This policy also provided *that employees who requested reasonable accommodations would continue working and submitting weekly negative test results while their accommodation request was pending with their individual agency, and then with the Citywide Panel.*

31.     Defendants never informed Plaintiff of any criteria, factors, or requirements for receiving a religious accommodation to the Vaccine Mandate. The NYPD provided a form for employees requesting a reasonable accommodation to the Vaccine Mandate.

7

32. This form stated that "Reasonable Accommodations for COVID-19 Vaccinations will be provided by the New York City Police Department to qualified employees with Medical or Religious exemptions".

33. The form also stated: "Supporting documentation from you and/or your religious official explaining your religious exemption from the COVID-19 vaccine is strongly suggested."

34. No where on the form was there a space provided for the particular accommodation being requested by the applicant.

35. On October 27, 2021, Plaintiff filed a Reasonable Accommodation Application for a Covid-19 Vaccine Exemption due to his sincere and genuine religious beliefs. (See Plaintiff's Application for a Religious Accommodation attached as Exhibit A).

36. Plaintiff applied for a religious accommodation as permitted under the law. Specifically, Plaintiff explained that all of the COVID-19 vaccines available at the time of his request, used aborted fetal cell lines, which originated from aborted children, in their manufacturing, development or testing.

37. Plaintiff explained in his request that he believes all life begins at conception and ends at natural death. He believes that God creates every human life intentionally and with purpose.

38. Plaintiff explained that the Christian Church has condemned abortion from earliest times.

39. Plaintiff explained that it is his sincerely held religious belief that abortion is murder.

40. Plaintiff explained that receiving the COVID-19 vaccination would violate his religious beliefs regarding abortion.

41. Plaintiff explained that if he were to receive any of the COVID-19 vaccines available at the time, he would be cooperating with and complicit in abortion, which he believed was the ending of a human life.

42. In his request, Plaintiff cited to numerous scriptures from the bible that supported his religious beliefs. Plaintiff also believes the body is sacred and Plaintiff should not receive chemicals that will manipulate, teach or change God's creation, namely the human cell and quotes from 1 Corinthians 6:19, *"Or do you know your body is a temple of the Holy Spirit within you, who, you have from God?"*

43. NYPD Equal Employment Opportunity Division Director, Michael Melocowsky stated that very few religious accommodations would be approved.

44. The Defendants did not contact Plaintiff regarding his request before issuing this denial.

45. Director Melocowsky instructed those assigned with making determinations on religious accommodation requests to the Vaccine Mandate that they did not need to communicate with applicants before denying their applications.

46. There was no interactive process or cooperative dialogue regarding Plaintiff's request for accommodation.

47. Defendants failed to follow any statutory requirements, failed to show an undue hardship, and failed to provide a reasonable accommodation.

48. On August 8, 2022, Plaintiff's request for a reasonable accommodation was denied by Defendant NYPD.

49. The NYPD granted reasonable accommodations to the Vaccine Mandate to other employees, including police officers working in the field.

50. The NYPD's appeal denial letter indicated that Plaintiff's accommodation request was denied because "*Does Not Meet Criteria.*"

51. Plaintiff was given seven calendar days to submit proof of vaccination or Plaintiff would be placed on Leave without Pay.

52. No one from the City or the NYPD contacted Plaintiff regarding his request for accommodation.

53. Plaintiff was told that all Appeals would be denied.

54. Upon learning that he his Appeal would be denied and then terminated, Plaintiff suffered immense pain and suffering including acute stress. He did not know how he would pay his bills or survive.

55. Facing the prospect of an appeal denial and imminent termination, Plaintiff was forced to retire from the NYPD on August 15, 2022.

56. Plaintiff would not have retired but for his imminent appeal denial and termination.

57. Plaintiff did not voluntarily resign. Plaintiff did not believe he would have the choice to continue his employment. Plaintiff's termination was inevitable.

58.    Defendants constructively terminated Plaintiff.

59.    If Plaintiff did not retire he would have been terminated and completely lose any and all pension that he was entitled to.

60.    The Defendants cannot demonstrate that providing a reasonable accommodation to the Vaccine Mandate would cause an undue hardship, particularly where other NYPD employees were accommodated.

61.    The City promulgated "FAQs on New York City Employees Vaccine Mandate" which stated that if an employee was granted a reasonable accommodation, the submission of a weekly PCR test and wearing a mask in the workplace was an allowable accommodation that would not cause an undue hardship and/or disruption.

62.    The Defendants cannot demonstrate that providing a reasonable accommodation to the Vaccine Mandate would cause an undue hardship, particularly where the COVID-19 vaccine does not cause prevention or transmission of the COVID-19 virus.

63.    The Defendants could have accommodated Plaintiff s request by providing routine weekly testing and masking.

64.    The Defendants' unlawful action turned Plaintiff's world upside-down; from selling his home and moving across the country, leaving his church, community and career that he loved behind.

65.    With Plaintiff left without an income, Plaintiff made the heartbreaking decision to leave everything he knew behind. His emotional distress was increased

by the daunting road ahead of having to move to another state, while trying not to spend much money.

66.    This caused the Plaintiff immense pain and suffering, which manifested itself physically.

67.    Plaintiff's constructive termination by Defendants was an unlawful retaliation for Plaintiff refusing to compromise his religious principles.

68.    The NYCHRL places the burden on the employer to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business. *Jacobsen v. New York City Health and Hospitals Corporation, 22 NYS3d 824 (2014)*.

69.    The Defendants cannot meet this burden because Plaintiff and other members of the NYPD had been working with a reasonable accommodation for several months.

70.    Plaintiff was constructively terminated on August 15, 2022 because he did not receive the covid-19 vaccination. Plaintiff was constructively terminated because Defendants refused to accommodate his sincerely held religious beliefs despite an available accommodation.

## FIRST CAUSE OF ACTION
**(Failure to Accommodate in Violation of the New York City Human Rights Law)**

71.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 70 as if set forth herein.

72.    At all relevant times, the NYCHRL has been in full force and effect and has applied to Defendants' conduct.

73.    Pursuant to the NYCHRL,

*It shall be an unlawful discriminatory practice for an employer or an employee or agent thereof to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion, … and the employer shall make reasonable accommodation to the religious needs of such person.*

N.Y.C. Admin. Code § 8–107(3)(a).

74.    At all relevant times, the Defendants had the power to hire, promote, and discharge Plaintiff.

75.    Plaintiff has sincerely held religious beliefs which prohibit him from receiving the COVID-19 vaccines.

76.    The Defendants required Plaintiff to receive the COVID-19 vaccine to retain his employment. However, vaccination is not a condition of employment for those who are eligible for a religious or medical accommodation.

13

77.     Plaintiff requested a reasonable accommodation to the Defendants'
requirement that he receive the COVID-19 vaccination. Plaintiff had continued to
work with an accommodation.

78.     Defendants failed to provide Plaintiff with a reasonable
accommodation of his religious observance, practice, and belief (i.e., that he is
prohibited from taking the COVID-19 vaccine), which precludes him from complying
with the Vaccine Mandate.

79.     In 2005, the New York City Council amended the NYCHRL by passing
the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), N.Y.C. Local
L. No. 85.

> In amending the NYCHRL, the City Council expressed the view that the NYCHRL had
> been "construed too narrowly" and therefore "underscore[d] that the provisions of New
> York City's Human Rights Law are to be construed independently from similar or identical
> provisions of New York state or federal statutes." Restoration Act § 1. To bring about this
> change in the law, the Act established two new rules of construction. First, it created a "one-
> way ratchet," by which interpretations of state and federal civil rights statutes can serve
> only " 'as a *floor* below which the City's Human Rights law cannot fall.' " *Loeffler,* 582 F.3d
> at 278 (quoting Restoration Act § 1). Second, it amended the NYCHRL to require that its
> provisions "be construed liberally for the accomplishment of the uniquely broad and
> remedial purposes thereof, regardless of whether federal or New York State civil and human
> rights laws, including those laws with provisions comparably-worded to provisions of this
> title[,] have been so construed." Restoration Act § 7 (amending N.Y.C. Admin. Code § 8–

14

130). *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *see also Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.*, 814 F. Supp.2d 355, 365-66 (S.D.N.Y. 2011) ("[T]he Second Circuit has directed the district courts to conduct an analysis of the NYCHRL claims that is separate from that undertaken for Title VII and New York State Human Rights Law claims." (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278-79 (2d Cir. 2009)).

80.    In 2011, New York City enacted the Workplace Religious Freedom Act, amending sections 8-102 and 8-107 of the NYCHRL, and adopting a stiffer standard for assessing undue hardship. The committee report accompanying this amendment stated that the City Council's intention is "*to provide greater protection to workers under the City Human Rights Law than the federal, and even the State, human rights provisions provide.*" N.Y.C. Council, Report of Committee on Civil Rights on Proposed Int. No. 632, Aug. 16, 2011. "The standard for assessing undue hardship under the NYCHRL differs from that under federal law when considering requests for reasonable accommodation." *COVID-19 & Employment Protections*, "Vaccinations," NYC Human Rights, accessible at https://www1.nyc.gov/site/cchr/community/covid-employment.page (last updated 11/1/2021).

81.    The New York City Human Rights Law explicitly defines undue hardship:

"Reasonable accommodation", as used in this subdivision, shall mean such accommodation to an employee's or prospective employee's religious observance

or practice as shall not cause undue hardship in the conduct of the employer's business. The employer shall have the burden of proof to show such hardship. "Undue hardship" as used in this subdivision *shall mean an accommodation requiring significant expense or difficulty* (including a significant interference with the safe or efficient operation of the workplace or a violation of a bona fide seniority system).

N.Y.C. Admin. Code § 8-107(3)(b)

82.    Plaintiff is and was able to perform the essential duties of his job with a reasonable accommodation.

83.    Accommodating the Plaintiff would not require significant expense or difficulty from the Defendants.

84.    Accommodating the Plaintiff would not significantly interfere with the safe or efficient operation of the Defendants' workplace.

85.    Accommodating the Plaintiff would not require the Defendants to violate a bona fide seniority system.

86.    Defendants could have accommodated the Plaintiff with weekly PCR testing and masking. Plaintiff was working with this accommodation for several months.

87.    Defendants accommodated other NYPD employees with weekly PCR testing.

88.    Defendants permitted other NYPD employees to continue working in their same position while engaging in weekly PCR testing without receiving the COVID-19 vaccine.

89.    Defendants permitted NYPD employees who had contact with the public and with other NYPD employees to continue working in their same job positions without receiving the COVID-19 vaccine.

90.    Defendants did not deny any NYPD employees religious exemption requests based upon undue hardship.

91.    If an NYPD employee sufficiently convinced the Defendants that his or her beliefs were religious, then that employee was provided a reasonable accommodation and permitted to keep working while unvaccinated.

92.    The Defendants' implemented a policy that provided for an accommodation of weekly PCR testing for NYPD employees.

93.    The NYCHRL prohibits Defendants from denying the Plaintiff's request for a reasonable accommodation until it engaged in a cooperative dialogue with the Plaintiff:

The determination that no reasonable accommodation would enable the person requesting an accommodation to satisfy the essential requisites of a job or enjoy the right or rights in question may only be made after the parties have engaged, or the covered entity has attempted to engage, in a cooperative dialogue.

N.Y.C. Admin. Code § 8-107 (28)(e).

94. However, Defendants violated the NYCHRL by ignoring Plaintiff's request for a reasonable accommodation without engaging in a cooperative dialogue and denying Plaintiff's request for an accommodation.

95. Instead of accommodating Plaintiff's religious beliefs, Defendants constructively terminated Plaintiff because he could not receive the COVID-19 vaccination.

96. Plaintiff was constructively terminated because the Defendants refused to accommodate his religious beliefs.

97. Defendants had no objective basis for questioning the religious nature of Plaintiff's religious beliefs.

98. Defendants had no objective basis for questioning the sincerity of Plaintiff's religious beliefs.

99. Plaintiff sufficiently articulated and explained the religious nature of his conflict with the Vaccine Mandate. Plaintiff set forth in explicit detail, citing to scripture, how his religious tenets conflict with the vaccine requirement.

100. Defendants never asked Plaintiff to demonstrate any history of vaccination or medicine refusal. Nor is such a history required in order to qualify for a reasonable accommodation.

101. Defendants simply rejected Plaintiff's religious beliefs without reason.

102. Defendants discriminated against Plaintiff's religious beliefs.

103. Defendants cannot demonstrate that accommodating Plaintiff would cause an undue hardship.

104.    Defendants accommodated other NYPD employees in the same or similar position as the Plaintiff.

105.    Defendants permitted other NYPD employees to submit weekly PCR testing instead of receiving the COVID-19 vaccination.

106.    As a direct and proximate result of Defendants' unlawful discriminatory practices, Plaintiff has suffered, and continues to suffer, substantial losses, including but not limited to the loss of past and future earnings, compensation and benefits, increases, promotions, bonuses, and other employment benefits, for which he is entitled to an award of monetary damages which exceeds the $75,000 jurisdictional requirement of this Court, and other relief.

107.    As a direct and proximate result of Defendants' failure to accommodate, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages in an amount to be determined at trial.

108.    As a direct and proximate result of Defendants' failure to accommodate, Plaintiff is thus entitled to injunctive and declaratory relief, as well as compensatory damages, including pain and suffering, and punitive damages for the injuries and loss sustained as a result of Defendants' unlawful discriminatory conduct under the NYCHRL, in an amount to be determined at trial.

109. Defendants willfully violated Plaintiff's right to a reasonable accommodation.

110. Defendants willfully violated Plaintiff's right to a cooperative dialogue.

111. Defendants willfully and wrongfully constructively terminated Plaintiff's employment.

112. Defendants knew they were acting in violation of the law.

113. The Department of Law of the City of New York promulgated guidance to private sector employers regarding religious accommodation requests to the City's COVID-19 Vaccine Mandate, and acknowledged the refusal to receive the COVID-19 vaccine based upon the use of aborted fetal cell lines in the testing, research, development, and/or manufacturing of the vaccines. (See Department of Law Guidance attached as Exhibit C).

114. Defendants violated their own employment policies and procedures by refusing to accommodate the Plaintiff.

115. Defendants did not consider the Plaintiff's individual job duties before refusing to accommodate Plaintiff.

116. The Defendants knew that they were required under the law to engage in a good faith discussion with Plaintiff in an attempt to understand his accommodation needs. However, the Defendants did not engage in such good faith interactive process or cooperative dialogue.

117. The Defendants knew that Plaintiff's beliefs qualified as religious under the law. There is no common sense reading of his request where Plaintiff's

objection to the Vaccine Mandate is not based on sincerely held religious beliefs. However, Defendants categorically rejected Plaintiff's religious beliefs.

118.    Defendants violated their own employment policies and procedures by failing to engage in a cooperative dialogue with Plaintiff.

119.    Defendants violated their own employment policies and procedures by failing to engage in an interactive process with Plaintiff.

120.    Defendants violated their own employment policies and procedures by refusing to accommodate Plaintiff.

121.    Defendants violated their own employment policies and procedures by denying Plaintiff's beliefs were religious.

122.    New York City Human Rights Law provides that for violations of the Plaintiff's free exercise of religion, the Defendants should pay Plaintiff's legal fees.

123.    Plaintiff is further entitled to an award of attorney's fees, expert fees, and other costs under the NYCHRL. N.Y .C. Admin. Code §8-502(g).

WHEREFORE, Plaintiff prays that this Court grant judgment to Plaintiff containing the following relief:

A.    A declaratory judgment that the Defendants' failure to accommodate is an unlawful discriminatory practice under the New York City Human Rights Law; and

B.    An Order that Defendants reinstate Plaintiff to his former position with full seniority, status, salary increments, full back-pay, bonuses and

21

benefits, to the same extent he would have received but for Defendants' unlawful conduct; and

       C.     An Award to Plaintiff of compensatory damages for Plaintiff's lost wages, back pay, front pay, overtime and benefits, in amount to be determined at trial; and

       D.     An award to Plaintiff of compensatory damages for the pain and suffering, humiliation, mental anguish, damages to reputation and livelihood, and emotional distress sustained by her in an amount to be determined at trial;

       E.     An Order that Defendants grant Plaintiff's request for a reasonable accommodation that will allow Plaintiff to perform the essential functions of his job; and

       F.     An award to Plaintiff for costs in this action, including reasonable attorney's fees and expert fees under the New York City Human Rights Law; and

       G.     On the First Cause of Action against Defendants, a judgment in an amount to be determined at trial; and

       H.     Granting such further relief to which Plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

Dated:      Syosset, New York
            June 8, 2025

**THE MERMIGIS LAW GROUP, P.C.**
*Attorneys for Plaintiff*

*/s/ James Mermigis*

_____

By: James G. Mermigis, Esq.
85 Cold Spring Road, Suite 200
Syosset, NY 11791
(516) 353-0075